**UNITED STATES of America,**
**Plaintiff-Appellant,**
v.
**Richard Lawrence WELLINS,**
**Defendant-Appellee.**

No. C.A. 80–1194.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1981.

Decided August 24, 1981.

Rehearing and Rehearing En Banc
Denied Oct. 23, 1981.

---

James P. Walsh, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Victor Sherman, Los Angeles, Cal., argued for defendant-appellee; Victor Sherman, Nasatir, Sherman & Hirsch, Los Angeles, Cal., Alan I. Karten, Miami, Fla., on brief.

Before TRASK and SCHROEDER, Circuit Judges, and CARROLL,* District Judge.

CARROLL, District Judge.

The United States appeals, pursuant to 18 U.S.C. § 3731, from an order suppressing evidence which was obtained through a "consent" search, and statements made by the defendant following that search.

At approximately 7:30 a. m. on Saturday, May 19, 1979, four agents of the Drug Enforcement Administration (DEA) were admitted to the hotel suite of Appellee, Richard Wellins, in Los Angeles, California. As they entered the sitting room three of the agents immediately conducted a "protective sweep" of the other rooms in the suite. The "protective sweep" produced a small quantity of marijuana which induced one of the agents to arrest Wellins. At that time Wellins was advised of his *Miranda* rights. The DEA agents then detained Wellins in the suite while they attempted to obtain a search warrant. While detained, Wellins was permitted to speak on the telephone with a person who was co-registered with him in the suite. At approximately 8:30 a. m. Wellins, pursuant to his request, was permitted to call his attorney in Miami, Florida, who advised him to remain silent. Immediately thereafter, Wellins consented to the search of the suite, and signed a "consent form" to that effect at 8:44 a. m. The district court found and concluded, without explication, that the "consent" given by Wellins could not validly be given in the circumstances for want of sufficient attenuation and, accordingly, suppressed the evidence found as a result of that search,[1] as well as statements made by Wellins upon being confronted with evidence obtained during the search.

The trial court was faced with making two determinations. First, it had to decide whether the consent to search and the statements were voluntarily given within

---

* The Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

1. In its Opening Brief, the Government admitted, for purposes of this appeal, that it did not have probable cause to search Wellins' hotel suite, and that the evidence seized prior to the signing of the consent form was properly suppressed. We express no view on this position. In its Reply Brief, the Government urged that the so-called "protective sweep" was "reasonable police work in the circumstances", and urged this Court to find that even if the search was unlawful, it should be protected under the "Good-Faith Exception to the Exclusionary Rule", citing *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980). Having admitted that the sweepsearch was unlawful, the Government is precluded from arguing, on appeal, a contrary position. We note, however, that the circumstances in this case, i. e., going to a person's residence for purposes of interrogation where there was no probable cause to arrest such person at the time of interrogation would not authorize any kind of sweep or search of other rooms in that residence. See *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *United States v. Allard*, 634 F.2d 1182 (9th Cir. 1980). The officers' initial entry into the premises, without an express invitation, is not an act of consent by the resident of the premises to a warrantless search, "protective" or otherwise. There were no exigent circumstances here which would authorize the agents' actions. Approval of this search on those grounds would effectively vitiate prior rulings in this delicate area of Fourth Amendment protections. *United States v. Kinney*, 638 F.2d 941, 943 (6th Cir. 1981); *United States v. Allard, supra*.

It should also be noted that if the "consent search" fails, the statements made by Wellins would also be properly suppressed under the *Wong Sun* doctrine. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus, the only issue to be resolved here is the validity of the "consent search".

the meaning of the Fifth Amendment to the United States Constitution. *Dunaway v. New York*, 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975); *United States v. Perez-Esparza*, 609 F.2d 1284, 1288 (9th Cir. 1980). If it found the consent to have been voluntarily given, the trial court then had to determine whether Wellins' giving of his consent was "*sufficiently* an act of free will to purge the primary taint of the unlawful invasion." *Brown v. Illinois, supra*, 422 U.S. at 599, 95 S.Ct. at 2259 (emphasis in original), *quoting Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416–417, 9 L.Ed.2d 441 (1963).

[4] Although the trial court concluded that Wellins could not have "validly" given his consent in the circumstances of this case (see discussion, *infra*) it is implicit in the trial court's ruling that he considered Wellins' consent to search to have been voluntarily given for Fifth Amendment purposes. To hold otherwise would have been clearly erroneous on the record presented, and would have required reversal. *Cf. Dunaway v. New York, supra*, 442 U.S. at 216–217, 99 S.Ct. at 2258; *United States v. Perez-Esparza, supra*, 609 F.2d at 1285–86; *United States v. Dubrofsky*, 581 F.2d 208, 212 (9th Cir. 1978). Thus, the issue facing the Court on appeal is, as stated by the Government:

Did the trial court erroneously suppress evidence as the tainted fruit of illegal police action by failing to give due weight to evidence of attenuation of the taint?

In making its determination regarding the sufficiency of the attenuation of the taint, the trial court was required to consider at least three factors. These factors are:

(1) the temporal proximity of the arrest and the giving of consent to search;

(2) the presence of intervening circumstances; and

(3) the purpose and flagrancy of the official misconduct.

*Brown v. Illinois, supra*, 422 U.S. at 603–604, 95 S.Ct. at 2261–62; *United States v. Perez-Esparza, supra*, 609 F.2d at 1289. In addition, the giving of *Miranda* warnings is also an important factor to be considered. *Brown v. Illinois, supra*, 422 U.S. at 603, 95 S.Ct. at 2261; *Dunaway v. New York, supra*, 442 U.S. at 226, 99 S.Ct. at 2263 (Rehnquist, J., dissenting).

After a hearing extending over parts of five days, and interrupted by other matters, and after arguments of counsel, the district judge entered the following findings of fact and conclusions of law with respect to the suppression issue [2] (omitting those findings and conclusions that are not contested by the parties):

After he was illegally arrested, he was given his Miranda rights. . . . (Excerpt of Record (ER) at 222.)

He continues to ask them to leave; they continue to ask him questions about the cocaine and about Hunter.

They then ask him—there is words to the effect, "I would love to have you look around here; you won't find anything."

They ask him if he wants to sign a consent. . . . He stated he wanted to talk to his lawyer, and he calls his lawyer; the lawyer tells him not to consent to anything. . . .

The defendant then advises the agents what the lawyer told him, that, "I will not consent to anything." That appears to be at about 8:30 and the consent is signed at 8:40, so shortly thereafter he says, "I will consent to have the apartment searched."

Agent goes down to the car, gets the consent form, brings it up; it is signed. . . . The record is clear that the lawyer did not consent to the search, but

**2.** The Court stated on the record he would "prepare an order of these [motions]" and added: "Let me make clear also that what I state here. . . . It does not mean to encompass all findings." ER at 218–219. No written order was entered, and the transcript of the findings and conclusions entered from the bench comprise the entirety of the trial court's findings of fact and conclusions of law.

that the lawyer was contacted and, the lawyer's advice to the contrary, the defendant did consent.

Now that is some attenuation.

But he is now the subject of an illegal arrest; he is the subject of an illegal search; and I believe that his consent cannot validly be given under the circumstances that existed, and I would find that the search of the [suite] was not a validly consented-to search. (ER at 223–224). . . .

Subsequent to the consent to search, [Wellins] consented to talk to [the agents]. (ER at 225.)

It was . . . approximately 8:44 they started the search. It went to 9:30. At that time he was arrested and put in handcuffs. A card was found by [Agent] Peoples which said that defendant had been a guest of Hunter's. Thereafter, the defendant said, "Okay; take the handcuffs off and I will tell you where Nick [Hunter] lives." (ER at 226.). . .

His handcuffs are removed and he gives them information with reference to the location of the home in Granada Hills and other things.

He is then arrested and taken down to the station.

He has been given his Miranda rights at least once, and maybe twice, depending upon the testimony. But he is still the subject of an illegal arrest and illegal search. And I do not believe that the consent given at that time is sufficient to validate the statements he made to the officers. (ER at 225.) [3]

■ The district court's findings do not reflect what the "circumstances" were that precluded the giving of a valid consent, and implies that, for some unexplained reasons, Wellins' consent "cannot validly be given." Although the court spoke of "attenuation", its finding approaches a *per se* position, i. e., that consent cannot validly be given where the defendant is the subject of an illegal arrest and search. Such an approach is improper; it is an incorrect legal standard.

■ The proper legal standard is as stated in *Brown v. Illinois, supra*, and set out above. In addition, a finding with respect to attenuation, like consent, can only be made after consideration of all the circumstances of the case, i. e., the 'totality of the circumstances' test enunciated in *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973).[4] That is, there must be a "careful sifting of the unique facts and circumstances of each case . . . ." *Id.*, 412 U.S. at 233, 93 S.Ct. at 2050; *United States v. Rothman*, 492 F.2d 1260, 1264 (9th Cir. 1973). *See Dunaway v. New York, supra*, 442 U.S. at 217, 99 S.Ct. at 2259.[5]

■ It should also be noted that the *Brown* test does not require that each of the factors set forth be resolved in favor of the Government. While it is not enough that *Miranda* warnings alone are given, it may be enough that the *Miranda* warnings are given and that a substantial period of time has elapsed between the occurrence of

---

**3.** Wellins also attempted to justify exclusion of material obtained on May 19, 1979, based on a purported confidentiality agreement reached with the Government. The record is clear that such agreement occurred after Wellins was taken from the hotel and that evidence obtained prior to leaving the hotel is not, therefore, subject to suppression because of that agreement. Other issues related to this agreement were resolved by this Court in *Matter of Wellins*, 627 F.2d 969 (9th Cir. 1980).

**4.** *Schneckloth* was a habeas corpus case in which the Supreme Court determined that "when the subject of a search is *not in custody* and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that [the State]

demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances . . . ." 412 U.S. at 248–49, 93 S.Ct. at 2059 (emphasis supplied).

**5.** "Following *Wong Sun*, the Court eschewed any *per se* or 'but for' rule, and identified the relevant inquiry as 'whether [the defendant's] statements were obtained by exploitation of the illegality of his arrest,' [*Brown v. Illinois ,supra*, 422 U.S.] at 600, 95 S.Ct. at 2260; *see Wong Sun v. United States, supra*, [371 U.S.] at 488 [83 S.Ct. at 417]." *Dunaway v. New York, supra*, 422 U.S. at 217, 99 S.Ct. at 2259.

the primary illegality and the giving of consent to search (or an incriminating statement). *Wong Sun v. United States, supra,* 371 U.S. at 491, 83 S.Ct. at 419. The lack of a significant intervening period of time does not, in itself, require that the evidence be suppressed for want of sufficient attenuation. *See United States v. Rodriguez,* 585 F.2d 1234, 1239, 1242 (5th Cir. 1978), *cert. denied* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980).

With respect to the intervening circumstances factor, it is apparent that in the instant case, even assuming that the trial court applied the proper legal analysis, the Court did not give due weight to the fact that Wellins had been permitted to consult with his attorney immediately prior to consenting to the search,[6] and to the fact that he was advised of his *Miranda* rights at least once prior to giving his consent to the search, and possibly twice prior to making the prejudicial statements after being arrested for the second time.[7] In addition, the record does not reflect that the trial court fully considered: that Wellins had been permitted to talk on the telephone with the person who was co-registered with him in the suite, as well as whatever information Wellins might have learned from that person which might have induced him to want to cooperate with the police; that during the search Wellins had been permitted to talk with the assistant manager of the hotel in the hall outside his room and had appeared relaxed; the extent of Wellins' cooperation in the search of his rooms, if any; and Wellins' personal circumstances, including his age, experience and intelli-

gence, the latter of which would appear substantial in light of Wellins' occupation as a commercial pilot.

All of the above mentioned facts are relevant in determining the test set out in *Brown v. Illinois,* for the reason that they have some bearing on the causal relationship between the illegal activity and the giving of Wellins' consent.[8]

The crucial factor in this case is that Wellins was permitted to consult with his attorney. This is so particularly in light of the totality of the circumstances. *Edwards v. Arizona,* —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Wellins is a licensed commercial pilot who, among other things, is rated to fly jet aircraft. In addition, Wellins is not a juvenile, and the record does not reflect that Wellins was in any way emotionally unstable at the time he gave his consent. Rather, the record compels the conclusion that Wellins was not only calm and composed, but that he was disposed to cooperate with the DEA while wanting to give the impression to others that he was not cooperating with the government agents.[9] In sum, Wellins' age, experience, intelligence, emotional state at the time he consented to the search, and the fact that he had been advised of his *Miranda* rights, while not *per se* "intervening circumstances", are all relevant considerations with respect to the possible effect of Wellins' consultation with his attorney. Realistically, it is difficult to imagine a set of circumstances which would more clearly require a finding of attenuation absent the

---

6. There are some circumstances in which consultation with an attorney, by itself, might provide sufficient attenuation. *Cf. Brown v. Illinois, supra,* 422 U.S. at 611, 95 S.Ct. at 2265, (Powell, J., concurring in part). Justice Powell indicated that a defendant's consultation with an attorney might be sufficient even in the most flagrant of circumstances. *Id.*

7. Wellins was arrested for his alleged participation in a conspiracy to distribute cocaine and was indicted in a three count indictment charging violations of 21 U.S.C. §§ 846 and 841(a)(1), and 18 U.S.C. § 1952.

8. *See United States v. Johnson,* 626 F.2d 753, 758–59 (9th Cir. 1980) *citing Dunaway v. New*

York, 442 U.S. 200, 220, 99 S.Ct. 2248, 2260, 60 L.Ed.2d 824 (1980) (Stevens, J., concurring.)

9. As Justice Powell remarked in his concurring opinion in *Edwards v. Arizona,* ... It is not unusual for a person in custody who previously has expressed an unwillingness to talk or a desire to have a lawyer, to change his mind and even welcome an opportunity to talk.... As Justice White has observed this Court consistently has 'rejected any paternalistic rule protecting a defendant from his intelligent and voluntary decisions about his own criminal case' ...

passage of a substantial period of time. *See Brown v. Illinois, supra,* 422 U.S. at 611, 95 S.Ct. at 2265, (Powell, J., concurring in part).

This case may properly be compared with *United States v. Rodriguez, supra,* 585 F.2d 1234 (5th Cir. 1978), *cert, denied* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). There DEA agents arrested William Martins, an 18 year old juvenile without probable cause and transported him to their offices. 585 F.2d at 1242. The agents permitted Martins to telephone a friend, a captain in the Hialeah Police Department. The juvenile informed the captain of the circumstances of his arrest and asked his advice. *Id.* at 1239. The captain advised Martins to cooperate fully with the DEA, whereupon he gave an incriminating statement. *Id.* On review the court of appeals affirmed the admission of the statement in evidence, concluding that the telephone call to the captain broke the causal connection between the illegal arrest and the giving of the statement. *Id.* at 1242. In the instant case the court is dealing with an intelligent adult, not a juvenile. In addition, Wellins was permitted to call his attorney, who advised him to remain silent. The police misconduct, while more serious than in *Rodriguez, supra,* was not as flagrant as the misconduct in *Brown v. Illinois, supra.* The totality of the circumstances in the instant case weigh more heavily in favor of attenuation than do the facts in *Rodriguez.*[10]

■ It may be that the trial court concluded that the "purpose and flagrancy of the official misconduct", *Brown v. Illinois, supra,* 422 U.S. at 603–604, 95 S.Ct. at 2261–62, was such that there was insufficient attenuation of the taint. However, the record presented does not indicate that the trial court drew that conclusion, nor does the transcript of the proceedings require that result.[11] While the Government will not be heard to say that the search and seizure was founded on probable cause, see note 1, *supra,* neither was its conduct as egregious as the circumstances present in *Brown v. Illinois, supra.* Wellins was permitted to talk to his hotel roommate on the telephone and was permitted to call his attorney. He was not subjected to threats, a show of force (other than the bare fact that there were four agents and the hotel

---

**10.** Wellins had talked on the phone with his hotel roommate, who was also suspected of participating in the alleged conspiracy. He knew that the DEA agents had arrested at least two alleged co-conspirators (Bellamy and Donahower) and that they knew about Nick Hunter, the central figure in the alleged conspiracy. In addition, the attorney to whom he spoke on the telephone was also Nick Hunter's attorney. This attorney had been trying to contact Wellins earlier that morning at the direction of Nick Hunter. These facts require the conclusion that Wellins, given his intelligence, etc., knew that his alleged co-conspirators were aware of his being detained or interviewed by the DEA agents, and that they might be watching the hotel—the only reason that Wellins would have insisted on being handcuffed, as he did here, before being taken from the hotel. Furthermore, the rapidity with which Wellins decided to consent to a search of the suite after having been advised to the contrary by his attorney compels the conclusion that Wellins had decided to 'play both ends against the middle', perhaps even before he spoke to the attorney. The entire circumstances lead to the conclusion that Wellins knew exactly what he was doing when he gave his search consent, and, further, that he was doing what he wanted

to do for reasons apart from the illegal search and seizure of the marijuana.

**11.** In determining whether the "purpose and flagrancy of the official misconduct" was such that there was insufficient attenuation of the taint, the trial court could, and should, have considered whether the factors relied upon by the DEA agents in making the arrest of Wellins were indicative of good faith on their part or whether the agents' actions were more egregious. *See Brown v. Illinois, supra,* 422 U.S. at 610–11, 95 S.Ct. at 2265 (Powell, J., concurring in part.) These circumstances include the following: At the time the agents knocked on the door to Wellins' suite the morning of May 18, 1979, they knew that Wellins had been at Nick Hunter's house the preceding evening; that he was a pilot and they had a readout from NADDIS (a computer indices within DEA of possible subjects in narcotic investigations) which related him (1–9–79) to piloting an aircraft which was a part of a narcotics investigation in Miami, Florida; that his hotel registration reflected an association with a Nick Hunter business entity "KIH Corporation". After they knocked at the door, they waited outside for as much as five minutes while they heard a shower running and a toilet being flushed.

detective), and did not appear to have been otherwise intimidated. Also, there were no threats or misrepresentations made which would have induced Wellins' consent. The absence of such facts weighs against the defendant. *See Parker v. North Carolina,* 397 U.S. 790, 796, 90 S.Ct. 1458, 1462, 25 L.Ed.2d 785 (1970). Perhaps the most compelling circumstance in this case is Wellins' answer to a question by the district judge— "I gave my consent of my free will."

The district court's order suppressing the fruits of the consent search and the subsequent statements is based on a finding and conclusion that is clearly erroneous.[12] Therefore, the order of the district court suppressing evidence acquired prior to Wellins' leaving the hotel suite with the officers the morning of May 19, 1979, is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

SCHROEDER, Circuit Judge, dissenting:

In my view, the district court properly considered the relevant factors in deciding that the consent was not sufficiently attenuated from the illegal police conduct for fourth amendment purposes. *See Dunaway v. New York,* 442 U.S. 200, 216–18, 99 S.Ct. 2248, 2258–59, 60 L.Ed.2d 824 (1979); *United States v. Perez-Esparza,* 609 F.2d 1284, 1288–89 (9th Cir. 1979). I see no reason to disturb the district court's determination, or to require a new consideration of the evidence. I would therefore affirm.

---

**12.** It is axiomatic at this point that findings of fact made by the trial court will be reversed on appeal only if clearly erroneous. *United States v. Jobin,* 535 F.2d 154, 156 (1st Cir. 1976); *Moser v. United States,* 381 F.2d 363, 364 (9th Cir. 1967). 3 C. Wright, Federal Practice & Procedure § 678. The question presented here is a mixed question of fact and law to the extent that the trial court may have applied the proper test, but erred in its findings of fact.