**Wilfred Joseph MILLER, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 081–85, 082–85 and 278–85.**

Court of Criminal Appeals of Texas, En Banc.

May 27, 1987.

Joseph A. Connors, III, McAllen, for appellant.

Rene Guerra, Dist. Atty., Theodore C. Hake, Asst. Dist. Atty., Edinburg, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

DUNCAN, Judge.

Factually, the appellant and Patricia Winkler enjoyed a relatively unbridled robbery adventure beginning the evening of March 25, 1982 when the appellant entered the Edinburg H.E.B. supermarket, pointed a firearm at two of the store's employees, took some money, and escaped in Winkler's automobile. Their last robbery occurred on July 4, 1982, when the appellant entered the Weslaco H.E.B. supermarket, after it had closed, and with his firearm aimed at one of the store's employees, took some money and again escaped in Winkler's car.

Between the H.E.B. supermarket robberies the appellant and Winkler were still active: they committed another robbery in an H.E.B. supermarket in Mercedes on April 20, 1982. This time the appellant apparently escaped on foot.

All three robberies remained unsolved until sometime in August, 1982, when Patricia Winkler told the police that appellant had committed the robberies.

On August 27, 1982, Edinburg police officer Ventura Cerda obtained an arrest warrant and along with several other officers arrested the appellant later that day.

The appellant was indicted under trial court Cause No. CR–845–82–E in two counts for two distinct aggravated robberies. The first count asserted the date of the offense as April 20, 1982; the second count claimed the date of July 4, 1982.

The appellant was also indicted under trial court Cause No. CR–850–82–E for the

other aggravated robbery that was to have occurred on March 25, 1982.[1]

The appellant was tried in what we will hereafter refer to as the first trial on Count One of the first indictment, or trial court No. CR–845–82–E. He was found guilty and assessed 20 years in the penitentiary and a $5,000.00 fine.

Later, the second count of the first indictment and the second indictment, trial court No. CR–850–82–E, at the appellant's insistence, were consolidated and tried jointly before the same jury. The appellant was convicted of both robberies. On the robbery pled as Count Two in Cause No. CR–845–82–E the appellant was assessed 30 years. In the robbery identified in Cause No. CR–850–82–E the defendant was assessed 15 years.

All three convictions were appealed to the Thirteenth Court of Appeals. In three separate opinions the Court of Appeals affirmed the appellant's convictions. The Court of Appeals' first opinion dealt with the conviction the State achieved in prosecuting only Count One in the indictment numbered CR–845–82–E. This opinion was published. See: *Miller v. State*, 687 S.W.2d 33 (Tex.App.—Corpus Christi 1985).

The second opinion from the Court of Appeals was concerned with the conviction of the second count in trial court Cause No. CR–845–82–E. This opinion was unpublished. See: *Miller v. State*, No. 13–83–00281–CR (Tex.App.—Corpus Christi, October 25, 1984).

The Court of Appeals' third opinion obviously concerned the appellant's conviction in trial court Cause No. CR–850–82–E. This opinion also was not published. See: *Miller v. State*, No. 13–83–00282–CR (Tex.App.—Corpus Christi, October 25, 1984).

Prior to the first trial on December 14, 1982, the appellant filed a motion to suppress evidence under Cause No. CR–845–

82–E. The same motion to suppress was simultaneously filed in Cause No. CR–850–82–E.

On January 20, 1983, a pretrial hearing was held by Honorable Arturo E. Guerra, Jr., Judge of the 275th District Court, who stated:

> THE COURT: All right. Be seated. Good Morning. I call for Pre-Trial Cause Numbers CR 845, 850, and 855–82–E [another case that is not before this Court], the State of Texas versus Wilfred Joseph Miller, Jr. What says the State?

Responding to the court's question, both the State and the appellant announced ready for the pretrial hearing. Appellant's counsel then informed the court that a number of identical motions including the motion to suppress had been filed in each case. The court then asked defense counsel: "Do you have any objections to hearing each of the motions as they pertain to each three cases, since they pertain to the same ..." Defense counsel concurred with the court that "the evidence was the same for each."

The court then proceeded to hear the motions to suppress evidence as they related to both robbery indictments: CR–845–82–E and CR–850–82–E. Following the hearing Judge Guerra denied the motions to suppress.

The appellant's first trial, which was the prosecution of only Count One of Cause No. CR–845–82–E, began on January 25, 1983. And, as previously noted, the appellant was convicted and assessed 20 years in prison and a $5,000.00 fine.

On June 6, 1983, the appellant returned to court and appearing before the Honorable Fred Hooey moved the court to consolidate Count Two of Cause No. CR–845–82–E with Cause No. CR–850–82–D. The court granted the appellant's motion. Prior to the trial, however, appellant's counsel

---

1. The numerous cause numbers that have been liberally sprinkled throughout this and the Court's original opinion are admittedly quite confusing. Therefore, the following cross-reference should be kept in mind:

| Trial | Trial Court Number | Court of Appeals Number | Court of Criminal Appeals Number |
|---|---|---|---|
| First Trial | CR–845–82–E (1st Count) | 13–83–062–CR | 278–85 |
| Second Trial | CR–845–82–E (2nd Count) | 13–83–00281–CR | 081–85 |
| | CR–850–82–E | 13–83–00282–CR | 082–85 |

brought to the court's attention a number of pretrial motions, including the previously filed motion to suppress. During this proceeding the following exchange between appellant's counsel and the court occurred:

MR. CONNORS: Thank you, Your Honor. Your Honor, the next motion is a motion to suppress any evidence illegally received and as I understand it, a similar motion [actually the same] was before Judge Arturo Guerra when he presided on these three or four cases combined and he ruled on that area.

THE COURT: Very well. That motion is overruled and you may except to that ruling and I will be glad to let you make a bill.

Thus, it is obvious that the appellant conceded that the motion to suppress evidence had already been considered and denied by Judge Guerra. It is equally as obvious that Judge Hooey by summarily overruling the motion to suppress merely recognized that Judge Guerra had already held a hearing on the motion to suppress and had denied it.

On direct appeal, appellant, as a part of a number of alleged errors, claimed that one or both of the trial judges erred in denying the motions to suppress all evidence obtained as a fruit of appellant's arrest because the arrest warrant was not based on probable cause. In the published opinion the Court of Appeals rejected all of the appellant's claims and pertinently held that the first trial judge did not err in denying the first motion to suppress because the evidence was purged of the taint of any illegality, or was admissible in its own right. In the unpublished opinions, the Court of Appeals held that the judge in the second trial did not err in denying appellant's second motion to suppress because, in that Court's words, "The underlying factual validity of the affidavit was established by the record."

We granted the appellant's Petitions for Discretionary Review in all three cases to examine the issue of whether the Court of Appeals was correct in concluding that the trial court properly denied the appellant's motion to suppress evidence. On original

submission we abandoned the "four corners" doctrine as it relates to the review of an arrest warrant for probable cause and concluded that the probable cause upon which an arrest warrant is issued need not be shown by the complaint alone. Accordingly, we held that the issuing magistrate may find probable cause by reference to more than one sworn document.

We granted the first ground of appellant's Motion for Leave to File Motion for Rehearing in all three cases to correct some factual inaccuracies in the original opinion and reconsider our desertion of the "four corners" doctrine.

After thoroughly reviewing the record it is apparent that the comments of this Court in its original opinion relative to the magistrate's consideration of the other affidavits was inappropriate and unnecessary to a disposition of the appellant's claims in any of the three cases. Therefore, we withdraw our original opinion and substitute the following opinion.

During the hearing held before Judge Guerra, Officer Cerda testified and identified himself as the police officer assigned to investigate an H.E.B. robbery in Edinburg, and as the officer who obtained an arrest warrant and arrested appellant for that robbery. Cerda testified that in the course of his investigation he obtained affidavits from Patricia Winkler, Bernice Jargue, Irma Castillo, and Jose Luis Cardenas, which inculpated the appellant in the robberies. Officer Cerda also testified that he obtained the arrest warrant from Justice of the Peace Ponciano Cantu. Cerda further stated that he presented to Judge Cantu his own sworn affidavit and "affidavit statements, the statement from Patricia Winkler, the copies, for example, the photos from the basketball team, and he reviewed all that—all this information—and he asked me several questions that I answered for him." However, what we overlooked in our original consideration of this case was that, with the exception of Officer Cerda's affidavit (complaint), none of this information was even offered, much less admitted, as evidence. As noted, the only affidavit in support of the arrest warrant

that was admitted into evidence by Judge Guerra and thus which he could consider was the conclusory statement of Officer Cerda. It states as follows:

I, Ventura Cerda, do solemnly swear that I have good reason to believe, and do believe and charge, that heretofore, on, or about the 25th day of March, 1982, in the County of Hidalgo and State of Texas, Wilfred Miller, hereinafter called Defendant, did then and there while in the course of committing theft and with intent to appropriate property of Roberto Mora to wit: money, without the effective consent of the said Roberto Mora and with itent [sic] to deprive the said Roberto Mora of said property, did then and there by using and exhibiting a deadly weapon, to wit: handgun intentionally and knowingly place Rebecca Ramirez in fear of imminent bodily injury.

■ Such an affidavit is insufficient to establish probable cause for a neutral and detached magistrate to issue an arrest warrant. This situation is very similar to that which this Court confronted in *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1981). In *Green* the defendant was arrested pursuant to a warrant that was supported by a purportedly sufficient affidavit. The affidavit in the *Green* case and this case are identical in at least one particularly significant matter, they both contain the following language: "he [the affiant] has good reason to believe and does believe and charge...." *Id.* at 705. Both affidavits then continue by the affiant merely reciting the statutory elements of the charged offenses—murder in the *Green* case and robbery in this case.

In *Green,* the insufficient conclusory affidavit rendered the arrest warrant invalid because it was not issued in response to probable cause. We are compelled to reach the same conclusion in this case. There is no information in the affidavit of Officer Cerda, other than his mere conclusion that the appellant committed the robbery, on which a neutral and detached magistrate

could even perceive, much less accept, as probable cause. Consequently, the arrest warrant that was issued was invalid in that it was not supported by probable cause. Accordingly, the arrest of the appellant pursuant to the invalid arrest warrant was illegal.

Prior to the beginning of the second trial the appellant offered as a "bill of exception"[2] the other affidavits the magistrate testified he considered. However, as this Court stated in *Hardesty v. State*, 667 S.W.2d 130 (Tex.Cr.App.1984):

When appellate courts are asked to determine whether the trial court erred in overruling a pretrial motion the general rule is that we consider only evidence adduced at hearing on that motion and do not resort to testimony subsequently elicited at trial because the ruling in issue was not based on the latter. *Id.* at 133, fn. 6.

Moreover, it is quite clear, as the appellant pointed out in his Motion for Leave to File Motion for Rehearing, that this Court has consistently, and quite properly, refused to "review the records of another case to find support for contentions raised in ... [another] appeal." *Garza v. State*, 622 S.W.2d 85, 89–90 (Tex.Cr.App.1981).

It should be noted that in *Rumsey v. State*, 675 S.W.2d 517 (Tex.Cr.App.1984) it was stated:

[W]hen a defendant challenges the validity of an arrest or search, and the State produces a warrant valid on its face, the burden is on the defendant to go forward with such proof as he may produce to show the invalidity of the warrant, and this includes not only production of any affidavit he may wish to attack but also the requirement that he see that the warrant and affidavit are included in the record on appeal. *Id.* at 520–521.

*Rumsey v. State, supra,* is somewhat misleading and appears in conflict with *Gant v. State*, 649 S.W.2d 30 (Tex.Cr.App.1983) and *Cannady v. State*, 582 S.W.2d 467

---

**2.** Notwithstanding the language, this was not a bill of exception as authorized by Art. 36.20, V.A.C.C.P.

(Tex.Cr.App.1979). In *Gant,* supra this Court stated:

> Therefore, we hold that when an accused objects to admission of evidence on the ground that it is tainted by a warrantless arrest and the State relies on an arrest warrant, in the absence of waiver, reviewable error will result unless the record reflects that the arrest warrant was exhibited to the trial judge for a ruling.
>
> .    .    .    .    .
>
> Thus, the corollary rule—that if the appellant desires an appellate review of the warrant and supporting affidavit, if any, he must offer a copy thereof for the record....  *Id.* at 33.

■ This procedural comment was based on the observation that the burden of justifying a contested arrest lies on the State. If the State intends to justify the arrest on the basis of a warrant it is therefore incumbent upon the State to produce the warrant "for inspection of the trial court for determination of its sufficiency." *Id.* at 32.

Contrary to the comment in *Rumsey, supra* that it is the duty of the defendant to produce the challenged affidavit, it is implicit in the language of *Gant, supra* and a logical and consistent requirement that in addition to producing the arrest warrant the state must also carry the burden of "producing for inspection of the trial court ...," *Id.* at 32, the supporting affidavit. Once the warrant and the supporting affidavit are produced by the State and "exhibited to the trial court ...," *Id.* at 33, it is the responsibility of the defendant to see that the warrant and the supporting affidavit are in the record if they are to be reviewed on appeal.

Accordingly, that portion of *Rumsey, supra* that places the burden of producing the contested supporting affidavit on the defendant is hereby disavowed. Instead, the procedural requirements as set out herein and in *Gant v. State, supra* and *Cannady v. State, supra,* are adopted.

■ Consistent therewith, the appellant introduced into evidence the affidavit he was attacking (Cerda's) and had it included in the record on appeal. It was not incumbent upon the appellant to introduce into evidence those other statements because it is evident from the record that they were not "exhibited to the trial judge for a ruling...." *Gant v. State, supra* at 33.

Thus, those other affidavits are no more before this Court for our review than they were before Judge Guerra for his consideration. Consequently, they cannot be relied upon to argue that the appellant's arrest was legal. *Hardesty v. State, supra.*

However, the illegal arrest of the appellant does not end our inquiry. Conversely, it simply begins it. The evidence the appellant wanted suppressed consisted of the pistol that was used in the robberies, a dufflebag, food discount coupons, and the cash accumulated as a result of the robberies. All of these items, except the coupons, were located at the appellant's house. How the police came to discover them and take possession of the evidence is what makes the appellant's illegal arrest not dispositive of the appeal.

After the appellant was arrested and taken to the Weslaco police station, while he was being booked into the jail and getting unclothed for a full body search, he pulled a .25 caliber automatic pistol from his underwear, and pointed it at the officer. Initially expressing his surprise at getting caught for the robbery offenses, according to Sergeant Cerda's testimony, the appellant then expressed concern about his parents finding out about his arrest. After he was persuaded to surrender the gun, he expressed further concern that his parents would also discover some marihuana at his house. Then, according to the witness, the appellant said, "You guys mind if we go and get it." Understandably, the police had no objection whatsoever.

When they arrived at the appellant's house he retrieved the marihuana from a closet. He also directed the police to a .22 caliber revolver in a drawer in the bedroom, which they took possession of. They then left the appellant's home to return to the police station. During the trip the appellant without any urging by the police offered to give them the stolen money.

They returned to his home and he gave them a duffle bag with over $4000.00 in it. They left the appellant's residence and were directed to another location where the police found some of the burned food discount coupons.

The appellant claims such evidence should have been suppressed because it was obtained by the police during a search that occurred after the appellant had been illegally arrested. But, the uncontroverted evidence shows that no search, at least in the traditional sense, ever actually occurred. On the contrary, everything the police acquired as evidence was voluntarily given to them by the appellant after they returned to his house to retrieve the marihuana.

Semantic niceties aside, whether a search in the conventional sense actually occurred is really academic because the appellant voluntarily consented to and purposely and gratuitously participated in the police investigative activity that followed his arrest. However, even assuming a search did occur the appellant's cooperative conduct dispels any thought that the search was illegal.

As a general proposition of law, evidence that is unlawfully obtained by law enforcement officers should be excluded from evidence at a defendant's trial. *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Cr.App.1981) cert. den., 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). And, principally because of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and its "fruit of the poisonous tree" doctrine, such suppression is applicable to evidence that is either directly or indirectly acquired in violation of the Fourth Amendment or Art. I, § 9 of the Texas Constitution. *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr.App.1977) (State's Motion for Rehearing). There are instances, however, that even though the police activity that led to the evidence was illegal such conduct will not inexorably produce a suppression of the evidence. For example, and particularly relevant to this case, a search that arises from an illegal arrest will not automatically and irrevocably create a path that leads to suppression. In *Armstrong v.*

*State, supra,* the Court stated: "And it has been said that consent by the defendant, if sufficiently an act of free will to purge the primary taint of the unlawful arrest or detention [citations omitted] may produce the requisite degree of 'attenuation.'" *Id.* at 31. See also: 3 La Fave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 8.2(d) (West Publishing Co.: St. Paul, Minn. 1987).

However, before the consent to search will be deemed effective, "the prosecution must prove by clear and convincing evidence that the consent was freely and voluntarily given." *Id.* at 32. And, a resolution of that question "is a question of fact to be determined from the totality of the circumstances." *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Cr.App.1985).

In *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) the United States Supreme Court concluded that giving a defendant who was illegally arrested his *Miranda* warnings will not "by themselves ... attenuate the taint of an unconstitutional arrest...." *Id.*, 95 S.Ct. at 2261. On the contrary, the court continued by stating:

> The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. *Id.*

The court then proceeded to detail factors that should be considered when one is faced with determining whether the defendant's statement was voluntary in the sense that it was a legitimate act of freewill untainted by the illegal arrest. Conceding that the *Miranda* warnings are important, the court noted these following factors are appropriate and necessary to determine "whether the confession is obtained by an exploitation of the illegal arrest," *Id.:*

1. The obligatory *Miranda* warnings;
2. The proximity of the consent to the arrest;

3. Whether the actions of the arresting officers can be classified as flagrant misconduct;

4. The nature of the consent: was it offered by the defendant or requested by the police;

5. Was the arrest made in order to obtain consent;

6. Physical condition of the defendant.

Since any arrest and the incidental custody of a defendant is necessarily coercive in nature, it necessarily follows that a mere acquiescence to the apparent authority of the police will not constitute consent. *Paulus v. State*, 633 S.W.2d 827 (Tex.Cr.App. 1981) (Opinion on State's Motion for Rehearing). Therefore, the inquiry must proceed beyond the mere observation that a consensual atmosphere accompanied the custody.

Although *Brown v. Illinois, supra,* was concerned with a confession, that does not prevent it from being an applicable, valuable and effective reference. Comparing each of these previously delineated factors to the evidence that was presented to the trial court at the Motion to Suppress hearing it is obvious that the appellant's consent was voluntary and not an exploitation of the illegal arrest. First, immediately after the appellant was arrested he was given his *Miranda* warnings. According to the testimony, after the officers told the appellant he was under arrest he invited them into his house and it was there that they read him his rights from a "Miranda rights card." In addition, when they got to the police station in Weslaco the officers read him his rights again. In our opinion the appellant was more than adequately appraised of his rights.

Second, the proximity of the illegal arrest to the time of the consent was quite brief. Officer Cerda testified he and another officer arrived at the appellant's residence at 11:01 A.M. The appellant was arrested and they went directly to the Weslaco Police Station, arriving there at 11:18 A.M. Shortly thereafter (the exact time is not identified in the record) the appellant's request to return to his house was made. They left and got back to his house at 12:01

P.M. If this were a confession case this brief expiration of time could prove troublesome. However, since it is undisputed that the appellant was the one to request the return to his house we are relieved of that concern. It should be noted that "[t]he lack of a significant intervening period of time does not, in itself, require that the evidence be suppressed for want of sufficient attenuation." *United States v. Wellins*, 654 F.2d 550, 555 (9th Cir.1981). The police conduct in this instance did not contribute whatsoever to the appellant's insistence on returning to his home to get the marihuana. What did cause the second visit to the appellant's home was his own conscience and the awareness that his parents would discover he used drugs. It is rather incredible that the appellant would try and insulate his parents from discovering he was a drug user, while at the same time readily and willingly producing evidence that would identify him as an armed robber. Nevertheless, Officer Cerda's testimony is not controverted and the record does reflect that marihuana was retrieved by the appellant from his home and turned over to the Weslaco police.

Third: although the arrest of the appellant was illegal in that it was made through the execution of an invalid arrest warrant, the officers' conduct at the time of the appellant's arrest or thereafter cannot be classified as misconduct. Officer Cerda was apparently fortunate enough to have arrested a suspect who was quite willing to cooperate with the investigation. There is nothing in the record to even suggest that the police exercised anything but good judgment in returning to the appellant's house.

Fourth, as to the appellant's physical condition: according to the testimony at the motion to suppress hearing, when Officer Cerda arrived at the appellant's house and told the appellant he was under arrest the appellant "was, like, in shock," but he did not appear to be under any medication and understood his rights after they were read to him. There is, then, nothing about the appellant's physical condition at the time he was arrested that might have influ-

enced his consent. There is nothing in the record to even suggest that any physical intimidation was used on the appellant by the police. Therefore, the appellant's physical condition does not affect the validity of his consent.

Finally, what can be considered jointly are the last two factors: actual purpose of the arrest and the nature of the consent. The appellant's arrest was not a subterfuge to achieve his consent to search his home. This is quite apparent from the nature of the appellant's consent. As noted previously, after the police and appellant arrived at the police station and while they were preparing to conduct a strip search of the appellant he pulled an automatic pistol that had apparently been concealed in the crotch of his underwear and aimed it at the officers and cocked the gun. The appellant, while holding the gun on the police, expressed surprise at being arrested for the H.E.B. robberies and, after he put the gun down, stated: "What are my parents going to say when they find out what I did. Look, I got some marijuana at the house. You guys mind if we go and get it." From that point the appellant took police to not only the marihuana but the other evidence that connected him with the robbery. It is difficult to conceive of a situation that is more consensual than this.

It is obvious that incidents such as this, which involve the judicial determination of consensual searches, cannot be reviewed exclusively through the spectrum of the Fifth Amendment because these cases incorporate Fourth Amendment concerns. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). On the other hand, the considerations that arose from the confession cases are quite relevant. *Green v. State, supra.* Of principal concern is whether the inculpatory conduct of the appellant was actually the exercise of his free will untainted by the illegal arrest. Or, in other words, were there intervening events that "attenuate[d] the taint," *Brown v. Illinois, supra,* 95 S.Ct. at 2261, of the illegal arrest. Conceding that the appellant's arrest was illegal, after reviewing the evidence as it relates to the factors that must be considered, we con-

clude that the consent was not obtained as an exploitation of the illegal arrest and that the appellant's decision to return to his home and give the evidence to the police was voluntary conduct. Such conduct was an intervening event that satisfactorily attenuated the taint of the illegal arrest. Thus, the appellant's motion to suppress in Cause No. CR–845–82–E was properly denied.

This now brings us to consider the validity of Judge Hooey's denying the appellant's motion to suppress in the second trial (the consolidated trial of the second count in Cause No. CR–845–82–E and Cause No. CR–850–82–E). It is imperative that the denial of this motion to suppress evidence be reviewed in light of the following matters:

(1) A thorough hearing on the motion to suppress had previously been held by Judge Guerra;

(2) The motion had been denied by Judge Guerra;

(3) Judge Hooey simply recognized that Judge Guerra had already denied the motion to suppress.

Since the motions to suppress were identical, and since the evidence that was introduced and admitted was identical it is apparent that the review this Court has given the trial court's ruling on the motion to suppress as it related to Count One in Cause No. CR–845–82–E is also applicable to a review of the motion to suppress in the second prosecution. *Hardesty v. State, supra.* Judge Hooey's adoption of Judge Guerra's ruling was appropriate.

The judgments of the Court of Appeals in the three cases are affirmed.