# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00569-CR

**Jason Matthew Truver, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TARRANT COUNTY, 371ST JUDICIAL DISTRICT
### NO. 0743445A, HONORABLE JAMES R. WILSON, JUDGE PRESIDING

Appellant Jason Matthew Truver appeals from his conviction for possession with intent to deliver more than four grams but less than 200 grams of methamphetamine. *See* Tex. Health & Safety Code Ann. '' 481.102(b), .108(a)(d) (West Supp. 2002). The jury assessed appellant=s punishment at imprisonment for forty-five years. Appellant asserts in his sole point of error that, AThe trial court erred in failing to suppress evidence seized as a result of the warrantless arrest of the appellant.@ We will affirm the judgment.

### Background

On August 10, 1999, William Martin Klozik snatched and escaped with about $2,500 worth of methamphetamine belonging to appellant. In a telephone conversation later that day, appellant agreed to meet with Klozik who claimed to be a police informer. Appellant, believing that Klozik was a

police informer, agreed to give Klozik $2,500 if Klozik returned the methamphetamine. Jeremy Ricketts and Shad Hocutt accompanied appellant to the night-time meeting with Klozik. Ricketts and Hocutt hid, setting up an ambush for Klozik. When Klozik appeared for the rendezvous with appellant, Ricketts shot and killed Klozik. Later, appellant became concerned that he could be implicated in the murder because his fingerprints were on the methamphetamine package Klozik had snatched from him. Appellant was also concerned that the cell phone calls he had received from Klozik could be traced if Klozik=s cell phone was recovered by police. Appellant and Ricketts returned to the murder scene in Ricketts= pickup. They found Klozik=s cell phone which appellant then threw into the river. Appellant and Ricketts could not find the methamphetamine package. However, appellant found Klozik=s car keys and drove Klozik=s car to a car wash. There, appellant disposed of legal documents, traffic tickets, and other papers he found in Klozik=s car. Appellant then drove the car to a hotel parking lot and tossed the keys into a dumpster.

Appellant soon became a suspect in Klozik=s murder. Curtis Brannan, a veteran detective with the Fort Worth Police Department, tried for several days, without success, to find appellant. However, on August 18 at about lunch time, Brannan found appellant at his girl friend Jacqualine Smalley=s apartment. Brannan told appellant that he was investigating Klozik=s murder and asked appellant if he would come to the police station to talk about the investigation. Appellant and Smalley both agreed; they followed Brannan to the police station in their car. Brannan first interviewed appellant privately and appellant made a written statement in which he acknowledged that he knew Klozik, that Klozik had tried to borrow money from him, and that someone had told him about Klozik=s death. Appellant did not incriminate himself in this written statement.

Brannan then privately interviewed Smalley; she gave Brannan information implicating appellant in Klozik=s murder. Brannan returned to appellant and advised him of his *Miranda* and statutory rights.[1] Appellant agreed to remain and continue his interview even though Brannan told him he was free to leave. Brannan then returned to Smalley and obtained a written statement in which Smalley related the circumstances of Klozik=s death presumably as related to her by appellant.

Brannan returned to appellant, advised him of his *Miranda* rights and continued the interview with appellant. Appellant made and signed a written statement implicating himself in Klozik=s murder. After appellant made his written statement confessing his part in Klozik=s murder, Brannan told appellant he was under arrest.

At the murder scene, police had found and made casts of footprints. Police had not yet determined the caliber of the weapon used to kill Klozik. Appellant was anxious to corroborate his statement with evidence that he had stayed in his car and that his gun was not used to kill Klozik. Appellant told Brannan that he had another pair of tennis shoes and a gun in the apartment. Appellant then gave his written consent for the officers to search the apartment.[2]

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979).

[2]

**STATE OF TEXAS** '                                    **Service        No.:**
                                                        **99527587**

**COUNTY OF TARRANT** '

**CONSENT TO SEARCH**

3

[I] _____Jason Truver_____, have been informed by the Texas Peace Officer who has served me with this document, that I have the right to refuse the officer, or any other officer, permission to conduct a search of the premises mentioned in this document, which are under my control.  I understand that should I refuse to consent, I have the right to be free from a search of these premises by a Texas Peace Officer, in the absence of a search warrant.  I understand that these rights are afforded to me under both the Constitution of the State of Texas and by the United States Constitution. Nonetheless, I HEREBY VOLUNTARILY WAIVE AND SURRENDER THESE RIGHTS, AND GIVE MY PERMISSION TO THE FOLLOWING OFFICER, DETECTIVE C. D. BRANNAN AND DETECTIVE CARLOS ORTEGA, ALONG WITH ANY ASSISTING OFFICERS, TO CONDUCT A COMPLETE SEARCH OF: THE PREMISES, BUILDINGS, AND CURTILAGE, LOCATED AT 1709 BEAUVOR, APT. # 1105.  (Initials of Consenting Party_____JT_____).

I FURTHER CONSENT TO A SEARCH OF ANY AND ALL VEHICLES UNDER MY CONTROL, LOCATED AT 350 W. BELKNAP.  (Initials of Consenting Party __JT__.).

I HEREBY PERMIT THE OFFICERS CONDUCTING THIS SEARCH TO REMOVE ANY OBJECTS, DOCUMENTS, OR ANY OTHER ITEM OF PROPERTY FOUND, WHICH THEY MAY REASONABLY BELIEVE CONSTITUTES EVIDENCE AND MAY BE USED IN A SUBSEQUENT CRIMINAL PROCEEDING AGAINST ME.

I have given this consent of my own free will, and herein state that my consent was not a product of threats, promises, intimidation, compulsion, or persuasion of any kind.

Signed:  /s/      Jason Truver          Date:        8-18-99      Time:        5:49 PM

Witness: /s/      C. D. Brannan            Signed: /s/        C. D. Brannan #1706
Witness: /s/      C. A. Ortega             Signed: /s/        C. A. Ortega #1910
                 Date:        8-18-99      Time:      17:49 hr

**4**

Appellant, Smalley, Brannan and other officers went to the police garage to wait for a crime scene unit to come to the garage to take possession of a handgun that was in the car appellant had driven to the police station. The crime scene unit was also to join other officers in the search of the apartment. Just before appellant and the officers were ready to leave the garage to go to the apartment to conduct the search, appellant volunteered to Brannan, AI got a safe out there. Will you want to look in it?@ Brannan asked appellant what was in the safe. Appellant told Brannan that the safe contained the other half of the methamphetamine that Klozik had not stolen from him. Brannan told appellant the officers would need to Acollect@ the methamphetamine.

When appellant and the officers left the garage to go to the apartment, Brannan returned to his office to prepare arrest warrant affidavits for appellant, Ricketts, and Hocutt. Warrants were issued about four hours after Brannan told appellant he was under arrest.

On their way to the apartment, appellant showed the officers where Ricketts lived. At the apartment, appellant cooperated in the search and voluntarily opened the safe using an electronic combination. Inside of the safe, two bags were found. One bag contained clear capsules and the other bag contained 113.5 grams of a substance later determined to be methamphetamine.

**Appellant=s Argument**

**5**

Appellant asserts that his oral admission to Brannan that he possessed contraband and the contraband seized were obtained as a result of his unlawful warrantless arrest; therefore, appellant insists that the trial court erred in refusing to suppress, and in admitting, this evidence. Appellant makes no claim that his warrantless arrest violated his federal or state constitutional rights. This is understandable, because appellant=s confession made before he was arrested furnished probable cause for his warrantless arrest. AAlthough arrests inside the home generally require a warrant, arrests outside of the home pass muster under the federal constitution so long as they are supported by probable cause.@ *Anderson v. State*, 932 S.W.2d 502, 506 (Tex. Crim. App. 1996) (citing *New York v. Harris*, 495 U.S. 14 (1990)). However, Texas law requires a warrant for any arrest unless one of the statutory exceptions is met. *Id.*; *Dejarnette v. State*, 732 S.W.2d 346, 349 (Tex. Crim. App. 1987).

Appellant=s claim is based on the statutory requirement of article 14.04 of the Code of Criminal Procedure.

### Art. 14.04.  When felony has been committed

Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Tex. Code Crim. Proc. Ann. art. 14.04 (West 1977). We will assume without deciding that appellant=s arrest without a warrant violated article 14.04.[3]

---

[3] The State does not concede that the arrest was unlawful and argues:

**6**

**Appellant=s Oral Admission**

A defendant=s incriminating statement made while the defendant is in custody after an unlawful arrest may be admissible in evidence if the taint of the unlawful arrest is sufficiently attenuated. *See Dowthitt v. State*, 931 S.W.2d 244, 261 (Tex. Crim. App. 1996); *Self v. State*, 709 S.W.2d 662, 666-68 (Tex. Crim. App. 1986). In determining whether the taint of the unlawful arrest was attenuated, Texas applies the four factor attenuation test of *Brown v. Illinois*, 422 U.S. 590, 603-604 (1975): (1) whether *Miranda* warnings were given, (2) the temporal proximity of the arrest and the confession, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct. *See Dowthitt*, 931 S.W.2d at 261; *Maixner v. State*, 753 S.W.2d 151, 155-58 (Tex. Crim. App. 1988); *Self*, 709 S.W.2d at 666-68.

---

Based on the evidence that Appellant fled the scene of a murder; returned and removed evidence linking him to the crime; moved from place to place, making himself difficult to find; gave a deceptive first statement as he feigned cooperation; and had been threatened and ordered not to talk by a killer [Ricketts] who had yet to be contained, a reasonable officer could believe that Appellant would escape if released while the officer took the time to get a warrant. The trial court did not err in overruling Appellant=s objection based on article 14.04. *See Busby*, 990 S.W.2d at 270; *Dowthitt*, 931 S.W.2d at 260; *West*, 720 S.W.2d at 518.

**7**

The Supreme Court has never said these factors were exclusive or assigned equal weight to each of the factors. *Juarez v. State*, 758 S.W.2d 772, 780 (Tex. Crim. App. 1988); *Self*, 709 S.W.2d at 668. The *Brown* test does not require that each of the factors be resolved in favor of the prosecution. *Juarez*, 758 S.W.2d at 780 (citing *United States v. Wellins*, 654 F.2d 550 (9th Cir. 1981)).

The State met the first attenuation factor in that appellant was advised of his *Miranda* rights regarding self incrimination both orally and in writing before he told Brannan that he possessed contraband contained in a safe. Although not sufficient in itself to attenuate the taint of an unlawful arrest, advising a defendant of his *Miranda* rights satisfies an important attenuation factor. *Maixner*, 753 S.W.2d at 156.

The time between appellant=s arrest and his admission that he possessed contraband was approximately two hours. Appellant signed his confession at 4:19 p.m. and signed a written consent form allowing the search some ninety minutes later at 5:49 p.m. It was some time after appellant signed the consent to search form that he volunteered there was a safe in the apartment containing contraband. Temporal proximity is an ambiguous factor and is not generally a strong factor *per se*. *Maixner*, 753 S.W.2d at 156; *Self*, 709 S.W.2d at 666. In determining attenuation in this case, the time lapse is not a significant factor counting against the State.

Appellant argues that there were no intervening circumstances. We disagree and find there were intervening circumstances to be considered. The record shows that after appellant made his written confession and after he was told he was under arrest, he wanted to corroborate his confession by showing that he stayed in his car at the murder scene and that his gun was not used to murder Klozik. Appellant gave Brannan written consent to search the apartment so that Brannan could obtain the gun and tennis

**8**

shoes. Before giving his consent to the search, appellant was advised of his constitutional right to withhold his consent. Appellant was not handcuffed and was allowed to purchase snacks. Appellant and officers walked to the police garage where appellant smoked a cigarette while waiting for a crime scene unit. It was after this that appellant volunteered that he had contraband in a safe at the apartment. These circumstances preceeding appellant=s admission furnish positive consideration in satisfying the third attenuation factor.

The fourth factor in the attenuation test, the purpose and flagrancy of the official misconduct, has been considered the most important factor. *See Maixner*, 753 S.W.2d at 157; *Self*, 709 S.W.2d at 668. The only official misconduct in this case was an alleged violation of article 14.04; we have assumed without deciding that there was insufficient evidence that appellant might escape before an arrest warrant could be obtained. Appellant=s arrest without a warrant did not violate his federal or state constitutional rights because Brannan had probable cause to arrest appellant. Appellant voluntarily came to the police station and was free to leave until he confessed his involvement in Klozik=s murder. Appellant=s girlfriend accompanied him to the police station. Appellant was not threatened, no show of force was made, and appellant was not handcuffed. As soon as circumstances permitted, Brannan obtained an arrest warrant for appellant. After assessing the relevant factors of the *Brown* attenuation test, we conclude that appellant=s statement was not obtained by the exploitation of the unlawful arrest. Appellant=s statement was sufficiently an act of his free will that the taint of an unlawful arrest, if any, was purged. *See Maixner*, 753 S.W.2d at 157-58; *Self*, 709 S.W.2d at 668.

**Search and Seizure of Contraband**

**9**

Appellant also contends that the contraband found in his safe at the apartment was obtained as a result of his unlawful arrest; therefore, he argues that evidence was erroneously admitted and should have been suppressed.

Officers, relying on appellant=s written consent to justify their search, searched the apartment without a warrant and seized the contraband found in the safe. Voluntary consent to a search is a well-established exception to the constitutional requirement of a search warrant or probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). The validity of consent to search is a question of fact to be determined from all the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). A person may voluntarily consent to a search even while in custody after an unlawful arrest. *Juarez*, 758 S.W.2d at 775; *Potts v. State*, 500 S.W.2d 523, 526-27 (Tex. Crim. App. 1973). That a person gives consent to a search while in custody is merely one of the factors considered in determining whether consent was voluntary. *Juarez*, 758 S.W.2d at 775.

The federal constitution requires that proof of consent to search be shown by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 (1974); *United States v. Hurtado*, 905 F.2d 74, 75 (5th Cir. 1990). However, the Texas Constitution requires clear and convincing evidence that consent to search was voluntary. *Carmouche*, 10 S.W.3d at 331; *Allridge*, 850 S.W.2d at 493; *Combest v. State*, 981 S.W.2d 958, 961 (Tex. App.CAustin 1998, pet. ref=d).

Courts and commentators have enumerated various factors, which are found within the totality of the circumstances in different cases, that should be considered in determining the voluntariness of

**10**

consent searches. LaFave discusses a number of factors that bear upon the validity of consent. Among these factors are: (1) a claim of authority, (2) a show of force or coercive surroundings, (3) a threat to seek or obtain a search warrant, (4) an officer=s deception of identity or purpose, (5) prior unlawful police action, (6) whether *Miranda* warnings were given, (7) whether a defendant was aware of his Fourth Amendment rights, (8) a defendant=s confession or other cooperation, (9) a defendant=s denial of guilt, and (10) a defendant=s maturity, sophistication, mental or emotional state. 3 Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* ' 8.2, 634-713 (3d ed. 1996).

The United States Court of Appeals for the Fifth Circuit has settled on six factors it considers in determining the voluntariness of consent to search. They are: (1) the voluntariness of a defendant=s custodial status, (2) the presence of coercive police procedures, (3) the extent and level of a defendant=s cooperation with the police, (4) the defendant=s awareness of his right to refuse to consent, (5) the defendant=s education and intelligence, and (6) the defendant=s belief that no incriminating evidence will be found. *See United States v. Brown*, 102 F.3d 1390, 1396 (5th Cir. 1996); *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993). The Texas Supreme Court has recently considered similar factors as evidence showing consent to search. *State v. $217,590 in U.S. Currency*, 18 S.W.3d 631, 634-35 (Tex. 2000).

In this case, the totality of the circumstances includes a number of factors for consideration in determining whether appellant voluntarily consented to the search of the apartment. (1) Appellant had been advised of his *Miranda* rights. (2) Appellant was advised of his Fourth Amendment rights and that he had a constitutional right to refuse consent. (3) There was no show of force, threats, or coercive surroundings. (4) There was no threat to obtain a search warrant. (5) Appellant was cooperative and had confessed he was a party to the offense of murder. (6) Appellant volunteered that he possessed contraband. (7) Appellant cooperated during the search and opened the safe. (8) There was no indication that appellant was immature, uneducated, or unsophisticated. (9) Appellant was in custody when he gave consent for the search, but he had not been handcuffed. Recently, in *Reasor v. State*, 12 S.W.3d 813 (Tex. Crim. App. 2000), the court found that Reasor voluntarily consented to a search in circumstances more egregious than those in this case. In *Reasor,* consent to search Reasor=s home was found voluntary even though: (1) police arrested Reasor outside his home at gunpoint, (2) police first entered Reasor=s home and made an unlawful protective sweep, (3) police then took Reasor into his home before requesting his consent to the search, (4) Reasor was in handcuffs while he signed the *Miranda* warning form and the consent to search form. *Id*. at 818. The court held that Reasor=s consent to the search was not fatally tainted and that the trial court did not err in denying Reasor=s motion to suppress the contraband obtained while searching his house. *Id*. at 819.

At a suppression hearing, the trial court is the sole and exclusive trier of fact and the judge of the credibility of the witnesses and their testimony. *Allridge*, 850 S.W.2d at 493. The appropriate standard for reviewing a trial court=s ruling on a motion to suppress requires a bifurcated standard of review:

(1) giving almost total deference to a trial judge=s determination of historical facts and application of the law to fact questions that turn on credibility and demeanor of the witnesses, and (2) reviewing *de novo* application of the law to fact questions that do not turn upon credibility and demeanor. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When, as in this case, the trial court does not make explicit findings of historical fact, review of the evidence is made in the light most favorable to the trial court=s ruling. *Carmouche*, 10 S.W.3d at 327-28; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

Giving deference to the trial court=s implicit finding of facts, we conclude *de novo* that (1) appellant=s oral admission that he possessed methamphetamine, and (2) the contraband found in the search were properly admitted in evidence. The trial court did not err in refusing to suppress this evidence. Appellant=s point of error is overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Justices Kidd, Puryear and Dally[*]

Affirmed

Filed: May 16, 2002

Do Not Publish

Before Carl E. F. Dally, Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).