OPINION
{¶ 1} Dono Barksdale appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of one count of possession of crack cocaine (25 grams but less than 100 grams), one count of possession of heroin (1 gram but less than 5 grams), one *Page 2 
count of tampering with evidence, and two counts of trafficking in crack cocaine (1 gram but less than 5 grams). Barksdale pled no contest to these charges following the denials of his motions to suppress and to sever the counts for trial.
 {¶ 2} On July 29, 2005, Barksdale was indicted on two counts of possession of cocaine (25 grams but less than 100 grams), one count of possession of heroin (one gram but less than five grams), two counts of trafficking in cocaine (25 grams but less than 100 grams), one count of tampering with evidence, and two counts of possession of criminal tools. On November 4, 2005, Barksdale was re-indicted so as to add an additional count of trafficking in cocaine (25 grams but less than 100 grams), two counts of trafficking in cocaine (one gram but less than five grams), and one count of trafficking in cocaine (100 grams or more). Barksdale filed a motion to suppress, which was denied. He also filed a motion to sever the counts in the indictment for trial. That motion was also denied. As part of a plea agreement, Barksdale subsequently pled no contest to one count of possession of cocaine (25 grams but less than 100 grams), possession of heroin (one gram but less than five grams), tampering with evidence, and two counts of trafficking in cocaine (one gram but less than five grams). He received an aggregate sentence of seven years in prison.
 {¶ 3} Barksdale raises four assignments of error on appeal.
 {¶ 4} I. "APPELLANT WAS DENIED HIS FOURTH AMENDMENT CONSTITUTIONAL RIGHTS WHEN THE COURT ERRED IN FAILING TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S PERSON SUBSEQUENT TO AN ARREST OF APPELLANT MADE WITHOUT PROBABLE CAUSE"
 {¶ 5} In his motion to suppress, Barksdale sought to suppress all evidence against him *Page 3 
that was obtained when he was stopped, searched, arrested, and interviewed by the police.
 {¶ 6} In July 2005, Detective Gregory Geyer was informed by a confidential informant, who had been reliable in the past, that he had been in contact with a person known as "Red" about the purchase of five ounces of crack cocaine. Geyer knew that "Red" was an alias used by Barksdale. Geyer arranged a meeting between the informant, Detective David House, and other members of the narcotics unit. During the meeting, the informant received a call from Barksdale and made arrangements to meet him at a church to buy crack cocaine. House accompanied the informant to the church, and other members of the narcotics unit positioned themselves nearby. The informant was searched before the meeting to ensure that he did not have any drugs or money in his possession.
 {¶ 7} Barksdale arrived at the church in a silver Chevrolet Caprice. He was not driving the car. Barksdale told the informant via cell phone that he wanted the informant to take a walk with him. They walked down an alley near the church. House got out of the car to follow shortly thereafter. When he did so, the driver of the Caprice began to trail him. House yelled to the driver that he just wanted to make sure his "dude" was okay, and then the Caprice drove off. House momentarily lost sight of the informant. When House called out to the informant, the informant and Barksdale stepped out of the alley, and the informant gestured for House to approach them. As House approached, the informant showed him two large baggies of crack cocaine, stating that it was five ounces. House then stated that he needed to return to the car to get money. Barksdale was unhappy that the informant had not brought the money.
 {¶ 8} When House got to the car, he radioed to the other officers in the area. He then walked back toward the informant and Barksdale. The informant no longer had the drugs in his *Page 4 
possession at this time. Barksdale began to back away, at which point House announced that he was "the police" and began to chase Barksdale. As they were running, House was about ten feet behind Barksdale when he saw Barksdale throw two objects over a fence and into some nearby bushes. When the area was searched, two baggies of crack cocaine were recovered, along with some crack that had apparently fallen out of one of the baggies. A cellular phone taken from Barksdale proved to be the phone that had called the confidential informant earlier in the day.
 {¶ 9} Barksdale was tackled by a police officer, and while he was on the ground he attempted to reach into the waistband of his pants. Fearing that he was reaching for a gun, police officers tazed Barksdale. He was subsequently transported to a hospital and interviewed at the hospital by Sergeant Spiers. He apparently made incriminating statements during this interview, but the substance of those statements is not in the record.
 {¶ 10} Under this assignment of error, Barksdale claims that the officers did not have probable cause to arrest him because they had not observed narcotics in his possession, had not heard him offer to sell drugs, and had not witnessed an exchange of drugs. Thus, he claims that the drugs and his statements to the police should have been suppressed.
 {¶ 11} Warrantless arrests are permissible under the Fourth Amendment when there is probable cause to believe that a criminal offense has been or is being committed. State v. Brown, 115 Ohio St.3d 55,2007-Ohio-4837, 873 N.E.2d 858, ¶ 66, citing United States v.Watson (1976), 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598. To have probable cause, the circumstances around the arrest must be such that, at the time of the arrest, a reasonably prudent person would believe that the person placed under arrest was committing or had committed a criminal offense. Id., citing Gerstein v. Pugh (1975), 420 U.S. 103,111-112, 95 S.Ct. 854, *Page 5 43 L.Ed.2d 54.
 {¶ 12} Based on the information provided by the confidential informant, who had proved reliable in the past, the officers' presence when the informant received a phone call from Barksdale about the drug purchase, House's observation that the informant had received drugs from Barksdale in the alley, his observation that the informant no longer had the drugs when House returned to the alley, Barksdale's flight from House when he identified himself as a police officer, and House's observation of Barksdale throwing two objects over a fence during the chase, the officers clearly had probable cause to arrest Barksdale. The fact that House did not witness the transfer of drugs from Barksdale to the informant is inconsequential, because the informant had been searched by the officers and they knew that he had not taken any drugs to the meeting with Barksdale. The obvious conclusion, based on the events that transpired, was that Barksdale had attempted to sell crack cocaine to the informant. Because the warrantless arrest was based on probable cause, the trial court did not err in refusing to suppress the evidence obtained as a result of the arrest.
 {¶ 13} The first assignment of error is overruled.
 {¶ 14} II. "APPELLANT WAS DENIED HIS FIFTH AMENDMENT CONSTITUTIONAL RIGHTS WHEN THE COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OF STATEMENTS ATTRIBUTED TO APPELLANT SUBSEQUENT TO HIS ARREST."
 {¶ 15} Barksdale claims that the state failed to prove that it had adequately informed him of his rights to remain silent and to have an attorney before questioning him and failed to prove that he had knowingly and voluntarily waived those rights. *Page 6 
 {¶ 16} Barksdale was questioned at the hospital after he was treated for injuries he had sustained during his arrest. Sergeant Spiers testified that he read Barksdale each of the rights verbally, then asked him after each right whether or not he understood them. Spiers stated that he read the rights off of his "rights card," but the card was not admitted into evidence. Spiers did not specifically enumerate the rights that he read to Barksdale. Spiers also testified that Barksdale did not appear to be under the influence of any drugs or alcohol at the time of the interview, and Spiers was "pretty positive" that Barksdale had not been given any medication, but he had not specifically inquired about this fact.
 {¶ 17} Barksdale argues that the state failed to meet its burden to show that Barksdale had been informed of all of his rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436, 478-479, 86 S.Ct. 1602,16 L.Ed.2d 694, and had voluntarily waived them.
 {¶ 18} The trial court reasonably concluded that Barksdale had been fully informed of his rights and had knowingly waived them. Spiers' testimony supported this conclusion. There is no requirement that testimony be offered as to each right specifically, or that the rights card from which the officer read be placed into evidence, although such a practice might be well advised. Moreover, Spiers testified that Barksdale did not appear to be under the influence of any medication or other drugs during their interview. Thus, the court reasonably denied Barksdale's motion to suppress the statements made to Spiers.
 {¶ 19} The second assignment of error is overruled.
 {¶ 20} III. "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER OF THE MULTIPLE COUNTS CONTAINED IN SEPARATE INDICTMENTS." *Page 7 
 {¶ 21} In addition to the evidence of the police chase and the recovery of crack cocaine by the Dayton Police Department on July 21, 2005, the state presented evidence that, in the two months prior to July 21, the Kettering Police Department and Montgomery County Sheriffs Department had been involved in drug purchases involving the defendant and a confidential informant. Each of these purchases involved crack cocaine, and they formed the basis of the four additional counts on which Barksdale was indicted in November 2005. Barksdale filed a motion to sever the counts for trial. The trial court overruled the motion, finding that the offenses charged in all counts were of similar character, and constituted a common scheme or plan, and thus were properly joined pursuant to Crim.R. 8. The court also concluded that the evidence of each count was simple and direct.
 {¶ 22} Crim.R. 8(A) provides that two or more offenses may be joined if the offenses charged are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses. State v. Torres (1981), 66 Ohio St.2d 340, 343,400 N.E.2d 401. The accused has the burden to affirmatively demonstrate that his right to a fair trial will be prejudiced by the joinder. Crim.R. 14;State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. For an appellate court to reverse a trial court's ruling denying severance, the defendant must demonstrate that the trial court abused its discretion. Id.
 {¶ 23} The trial court did not abuse its discretion in concluding that the various acts at issue constituted parts of a common scheme or plan. All were related to drug sales and *Page 8 
possession over a couple of months in which police officers from several jurisdictions had staged drug buys with the help of a confidential informant. The evidence relating to the various offenses was distinct and susceptible to individualized treatment. Thus, joinder was permissible.
 {¶ 24} The third assignment of error is overruled. IV. "THE TRIAL COURT ERRED IN SUSPENDING APPELLANT'S DRIVER'S LICENSE FOR A PERIOD OF SEVEN YEARS"
 {¶ 25} The trial court suspended Barksdale's driver's license for seven years, a period commensurate with his aggregate sentence. Barksdale argues, and the state concedes, that the maximum allowable length of a driver's license suspension is five years. See R.C.2925.03(G) and R.C. 2925.11(E)(2). Thus, the trial court's judgment will be modified to reflect a driver's license suspension of five years. App.R. 16(B).
 {¶ 26} The fourth assignment of error is sustained.
 {¶ 27} The judgment of the trial court will be modified with respect to the length of the driver's license suspension. In all other respects, the trial court's judgment will be affirmed.
 BROGAN, J. and DONOVAN, J., concur. *Page 1